IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIGUEL MOLINA, et al, | No. 4:21-cv-00038 |
| Plaintiffs, | CLASS ACTION |
| v. | (Judge Brann) |
| KEVIN KAUFFMAN, et al., | (Chief Magistrate Judge Mehalchick) |
| Defendants. | |

**BRIEF IN SUPPORT OF MOTION FOR CERTIFICATION
OF CLASS AND APPOINTMENT OF COUNSEL**

I. PROCEDURAL HISTORY

The five named plaintiffs filed this action against four defendants, *pro se*, on December 30, 2020 through the prison's mail system. They designated it a class action. (Doc. 1.) On January 12, 2021, the plaintiffs filed a Motion for Preliminary Injunction. (Doc. 8.) They filed a supporting brief on January 24, 2021. (Doc. 19.) But, the defendants had not been served with the Complaint, so no opposition was filed. The district judge issued a verbal order on February 11, 2021, referring the case to the magistrate judge for "pretrial management of case up to and including motion to certify class action."

Counsel entered appearance for the plaintiffs individually on March 15 and 17, 2021. (Docs. 28, 30.) The Amended Complaint was filed March 21, 2021, adding four additional defendants. (Doc. 35.) All eight defendants have waived

service. (Docs. 29, 37.) An Amended Motion for Preliminary Injunction was filed March 26, 2021. (Doc. 42.) Plaintiffs have moved for class certification and appointment of counsel. This brief supports that motion.

## II. FACTS

The State Correctional Institution at Huntingdon is an old, outdated, and deteriorating facility. During the times relevant, its inmate population averaged about 2,000 men. Most were doubled up in cells originally intended for a single occupant. The cells in the four original cell blocks are stacked in three or four tiers. They open onto narrow catwalks. The bars in the cell gates and windows provide the only ventilation, which is passive circulation of stale air from a large interior space beyond the catwalks. Large windows in the opposite wall let in some light but little air, since most are sealed. The electrical wiring is antiquated and failing. Each cell has a lavatory unit with a sink above an open toilet. The lavs are cracked and encrusted with sediment.

With the onset of the coronavirus pandemic in March 2020, the Department of Corrections issued directives to reduce the risk of contagion, modeled in part on guidelines published by the federal Centers for Disease Control. Unfortunately, the Department also transported inmates into and out of SCI Huntingdon in an unsafe manner. Moreover, the Superintendent of SCI Huntingdon failed to implement the DOC's mandatory measures for Covid

control. That failure was owing in part to the condition of the physical plant, which made quarantine difficult. But the greatest impediment has been noncompliance by rank-and-file corrections officers and other prison staff. As a result, the rate of Covid-19 infections and deaths among inmates at SCI Huntingdon has been many times the rate at the DOC's other prisons.

### III.   QUESTIONS PRESENTED

**Should class certification be granted?**

**Should Marianne Sawicki, Esquire be appointed class counsel?**

Suggested answers:  **Affirmative** as to both questions.

### IV.   ARGUMENT

The five named plaintiffs meet their burden to establish their own Article III standing and to show that the class proposed meets all four criteria stated in Rule 23(a) of the Federal Rules of Civil Procedure. This litigation should be certified as a class action under Rule 23(b)(3) because it presents questions of fact and law that are common to all class members. Attorney Sawicki, the undersigned, should be appointed to represent the class because she meets the requirements stated in Rule 23(g) and no other suitable candidate has come forth. The Motion should be granted.

### A. Each of the five plaintiffs who filed this action has standing to sue for relief in federal court for the injuries alleged.

Standing to sue in federal court is conferred when a plaintiff has suffered an injury in fact that is fairly traceable to the challenged conduct of a defendant and that is likely to be redressed by a favorable judicial decision. *Mielo v. Steak 'n Shake Operations, Inc*, 897 F.3d 467, 478 (3d Cir. 2018). The "cases or controversies" requirement of Article III is satisfied for a class as long as a representative member has standing. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015).

The five named plaintiffs have attested to their injuries in verified statements filed in this action. (Docs. 1, 8, 19, 35.) All are incarcerated at SCI Huntingdon, and at least two – Alexis Maldanado and Angel Irizarry – contracted Covid-19 at the prison. Another plaintiff, Jason Cisne, attests that he was housed on C Block at the prison and witnessed hazardous conditions and a fire there. All five plaintiffs have attested that the staff at the prison disregard mandatory procedures for quarantine, masking, and social distancing.

The Court may take judicial notice of evidence supporting causation of the injuries by the defendants. Procedures for transfer of inmates are described in deposition testimony given by William Nicklow and by former EDS Shirley Moore Smeal in another case before the same district judge, *Thomas v. Duvall, et al.* Case No. 3:16-cv-00451-MWB-SES. *See* Doc. 78-2 and Doc. 79 in that

4

case.  The Department of Corrections publishes the names of administrators on its website, cor.pa.gov.  *See* dropdown menus for "about us" and "facilities."  The same website posts current and historical population figures for each prison as well as data and mandatory procedures related to the coronavirus pandemic.  *See, e.g.*, "coronavirus dashboard."  The photographs of the cell block and the catwalks at SCI Huntingdon, included in the Amended Complaint in this action, are slides from surveillance video entered into evidence in another case in this district, *Abney v. Younker, et al.*, Case No. 1:13-cv-1418-YK-MCC.  *See* Doc. 242-1 in that case.  With visitors barred, the coronavirus entered SCI Huntingdon through the negligence or deliberate indifference of its staff.  *Res ipsa loquitur*.

This Honorable Court has jurisdiction to grant injunctive relief that will halt the violations of Eighth Amendment rights that continue daily at SCI Huntingdon.  The Court can also award damages.  On the basis of evidence already adduced in this matter, a decision favorable to plaintiffs is likely.

**B. This suit satisfies all of the prerequisites for a class action that are set forth in Rule 23(a).**

Rule 23 of the Federal Rules of Civil Procedure establishes the criteria for class certification and for selection of class counsel.  Plaintiffs must satisfy the criteria through factual showings.  *Ferreras v. American Airlines, Inc.*, 946 F.3d 178, 182-83 (3rd Cir. 2019) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) and *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307

(3d Cir. 2008)).  The criteria are satisfied here through verified statements in the record and through published data that are subject to judicial notice.

      1.   <u>The class numbers more than 2,500 individuals.</u>

The class of plaintiffs in this action will comprise all inmates who have been incarcerated at SCI Huntingdon at any time since December 30, 2018, which is two years prior to the filing of the Complaint.  The Court may take judicial notice of current and historical population data published at <u>cor.pa.gov</u>.  The number currently housed at the prison is about 1,800.  In 2019 and 2020, the population of the prison on any given day was usually above 2,000.  The class includes men who have been housed at the prison throughout the relevant time, as well as men who arrived or departed after December 30, 2018.  It is impractical, if not impossible, to join that many plaintiffs individually.  Nevertheless, the membership of the class can be accurately determined through records maintained by the Department of Corrections.

      2.   <u>The Eighth Amendment applies or applied equally to all class members during their incarceration, and they are or were subjected to the same conditions.</u>

Questions of law and of fact are common to the class.  Every prisoner is entitled to the same Constitutional protection against cruel and unusual punishment.  Every class member is or was a prisoner housed under the same conditions at SCI Huntingdon.  The facts to be proven pertain to unconstitutional

conditions at the prison before the onset of the pandemic in the spring of 2020. Those conditions included both the deteriorated physical plant and the habitual insubordinate conduct of the staff. When the pandemic struck, both of those factors caused additional Constitutional injury. Defendants' conduct was not only unconstitutional but negligent and tortious under the common law. All members of the class sustained injury, albeit some more seriously than others.

3. <u>The claims of the five representative plaintiffs are typical.</u>

The plaintiffs who initially filed this action are adequate representatives of the members of the class. All five attest that they have been incarcerated at SCI Huntingdon throughout the relevant period, that is, from prior to December 30, 2018 until the present time. They range in age from 39 to 55. At least two of the five – Miguel Maldanado and Angel Irizarry – have contracted Covid-19 at the prison and continue to experience symptoms of so-called "long Covid." Declarations already filed in this litigation demonstrate that all five of the representative plaintiffs are familiar with the prison's physical plant and the reckless conduct of its staff.

Several members of the class are no longer living, because they died of Covid-19. Arguably, the survivors and the estates of deceased class members could pursue an additional claim for wrongful death. Deceased class members will get no benefit from the injunctive relief demanded in this action, nor will

class members who have been transferred or released from SCI Huntingdon. Nevertheless, the five named plaintiffs present claims that are typical of those of the entire class. Damages can be prorated to reflect the duration of each man's incarceration at the prison.

        4. <u>The five representative plaintiffs will fairly and adequately protect the interests of the class.</u>

The named plaintiffs adequately represent the class. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). They share the same interests as all other class members, albeit in different ways. The interests of the named plaintiffs are identical to the interests of other class members who remain incarcerated at present and to the interests of class members who will be transferred into SCI Huntingdon during this litigation. All have equal need of immediate injunctive relief from the hazardous condition of the prison's physical plant and from the ongoing misconduct of its staff.

Some class members no longer are housed at the prison, so they do not need injunctive relief. However, all former Huntingdon inmates, whether living or deceased, have a common interest in compensation through damages. The monetary relief demanded in the Amended Complaint would be proportional to the duration of confinement at SCI Huntingdon. Estates and survivors of deceased class members would not be precluded from suing for additional damages for wrongful death.

## C. This suit satisfies the Rule 23(b)(3) requirements of "predominance" as to questions of law or fact and "superiority" as to procedural efficiency.

This case qualifies as a Type (b)(3) class action because "questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). Writing for the Court in *Amchem*, Justice Ginsberg explained that:

> the predominance inquiry … trains on the legal or factual questions that qualify each class member's case as a genuine controversy…. The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.

*Amchem*, 521 U.S. at 623 (citing 7A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1777, pp. 518-19 (2d ed. 1986)). The potential for high damages in individual cases does not preclude class certification. *Id.* at 617. But, the aggregation of claims for a class empowers individuals who would lack the resources to vindicate their claims if they had to act alone. *Id.*

All members of the class were and are injured in the same way at SCI Huntingdon, that is, through incarceration in a hazardous facility operated by recklessly insubordinate staff. The Eighth Amendment protects all equally. Individuals may differ, but only as to whether they are confirmed to have Covid-19 and how sick it has made them. It is not much of an overstatement to conclude that, without immediate injunctive relief, *every* inmate at SCI Huntingdon will

eventually contract Covid-19.  No inmate is safe.  Even before the onset of the pandemic in the spring of 2020, class members incarcerated at SCI Huntingdon endured conditions that offend the Eighth Amendment.

Class certification is appropriate here to avert multiple fragmented actions by inmates at SCI Huntingdon.  Their claims should not be aggregated with those of offenders and detainees at other prisons, however.  The situation at SCI Huntingdon is unique.  The mechanisms of injury alleged here are dissimilar and more egregious than those at other state and county correctional institutions in this district.  Hence, the injunctive relief must be more drastic than the relatively minor adjustments that might improve pandemic conditions at other prisons.

**D.  Marianne Sawicki, Esquire, should be appointed to represent the class.**

Rule 23(g) requires appointment of class counsel upon certification of a class.  Choice of counsel is guided by a list of considerations and "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1).

Attorney Sawicki, the undersigned, presents appropriate qualifications.  She has litigated on behalf of prisoners in civil rights cases since she was licensed to practice law in October 2012.  To date, she has entered appearance in some two dozen cases, according to PACER.  Prisoner cases comprise about 90% of the work of her Law Office.  Some are *pro bono* cases accepted from the Federal

Bar Association. Attorney Sawicki is admitted to the bar of the Third Circuit, where she has litigated several prisoner cases, and to the bar of the United States Supreme Court, where she has filed petitions for certiorari in two prisoner cases, albeit unsuccessfully, in addition to an amicus brief for the Lewisburg Prison Project. In this district, she often negotiates settlements of prisoner cases with counsel representing the Department of Corrections, assisted by judicial officers.

Dr. Sawicki formerly was an Official Visitor for the Pennsylvania Prison Society in Huntingdon County. She entered SCI Huntingdon many times in that capacity for conferences with administrators and with prisoners. Subsequently, as a lawyer, she visited clients at SCI Huntingdon several times a month on average before the pandemic. She has toured and photographed the facility for discovery and has taken the depositions of its staff.

Attorney Sawicki has maintained an extensive correspondence with inmates at state correctional institutions and other correctional facilities throughout the Commonwealth. Prisoners' families and friends receive free legal advice by phone. This service, which the Law Office always provided, has been much more in demand recently as conditions deteriorate at SCI Huntingdon. These contacts are sources of information and insight for this case.

Dr. Sawicki lives and works in Huntingdon Borough, about three miles from SCI Huntingdon. Mail from the Law Office can be hand-delivered to the

institution under DC-ADM 803. Attorney Sawicki has corresponded with all five of the named plaintiffs, and each has formally retained her services. She interviewed Mr. Molina and Mr. Maldanado by telephone on March 15, 2021 before entering appearance in this case. She reviewed the record, researched the statutory and case law, and then filed the Amended Complaint on March 21, 2021. She has earmarked funds in the amount of $42,000.00, on deposit in her IOLTA account, to be available to cover expenses anticipated in this litigation.

No other attorney has come forward to represent this class. A local attorney is preferable to state-wide representation by a larger law office. The Pennsylvania Institutional Law Project is believed to have an informal agreement with its funding agency not to undertake class actions. The American Civil Liberties Union of Pennsylvania has expressed disinterest in local issues at SCI Huntingdon on a number of occasions in the past. There are a few other nonprofit organizations that conduct legal advocacy for prisoners in Pennsylvania, but undersigned counsel is informed by clients that those organization have declined requests for assistance with the urgent situation at SCI Huntingdon.

## V.   CONCLUSION

For the reason stated herein, the Motion should be granted. The class should be certified, and Marianne Sawicki, Esquire should be appointed to represent the class.

        Respectfully submitted,

/s/ *Marianne Sawicki*

MARIANNE SAWICKI, Esquire
PA No. 313471
2530 South Blair Avenue
Huntingdon, PA 16652
(814) 506-2636
Law.Sawicki@gmail.com

## CERTIFICATE OF SERVICE

This document is filed and served electronically. No certificate of service is required when a paper is served by filing it with the court's electronic-filing system. Fed. R. Civ. P. 5(d)(1)(B).

/s/ *Marianne Sawicki*

MARIANNE SAWICKI
Attorney for Plaintiffs